UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HUNTER CADE BROWN, | ) | CIVIL ACTION NO. 4:20-CV-2300 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiff Hunter Cade Brown, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

II.     BACKGROUND & PROCEDURAL HISTORY

On January 3, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15; Doc. 17-2, p. 16).   In these applications, Plaintiff alleged he became disabled on either December 1, 2007 or August 8, 2009, when he was between six and eight years old, due to the following conditions: bipolar disorder; autism; and attention deficit hyperactivity disorder ("ADHD"). (Admin. Tr. 183; Doc. 17-6, p. 3).[1] Plaintiff alleges that the combination of these conditions affects his memory, and his ability to complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 212; Doc. 17-6, p. 32). Plaintiff has a limited education. (Admin. Tr. 23; Doc. 17-2, p. 24); 20 C.F.R. 416.964(b)(3) (defining "limited" education as a 7th through 11th grade level of formal education).

---

[1] The ALJ's decision identifies Plaintiff's alleged onset date as December 1, 2007. However, the initial denial lists Plaintiff's alleged onset date as August 8, 2009. Plaintiff's attorney identifies an onset date of August 8, 2009 during the administrative hearing. This discrepancy is not relevant to the Court's analysis as the earliest date of eligibility for a Title XVI claim would be the date of filing. (Doc. 17-2, p. 35). Plaintiff was eighteen when he filed his applications.

On February 22, 2019, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 17-2, p. 16).[2] On March 1, 2019, Plaintiff requested an administrative hearing. (Admin. Tr. 84; Doc. 17-4, p. 7).

On November 6, 2019, an administrative hearing was held before Administrative Law Judge Theodore Burock (the "ALJ"). (Admin. Tr. 15; Doc. 17-2, p. 16). During that hearing counsel argued that Plaintiff's claim was "SSI" only. (Admin. Tr. 34; Doc. 17-2, p. 25). In the decision, the ALJ noted that "the claimant's Title II claimant status was denied because he was not insured for Title II disability benefits." (Admin. Tr. 15; Doc. 17-2, p. 16).

On December 19, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 24; Doc. 17-2, p. 25). On the same day, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 145; Doc. 17-4, p. 68).

On October 7, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 17-2, p. 2).

---

[2] The ALJ summarizes that Plaintiff's applications were denied on this date. It appears that Plaintiff's Title XVI claim was denied on February 22, 2019. Plaintiff's Title II claim was not denied until April 5, 2019. (Admin. Tr. 104-105; Doc. 17-4, pp. 27-28) (denying Title II application because Plaintiff did not have enough "work credits" to qualify for benefits). This discrepancy is not relevant to the review of the decision denying Plaintiff's Title XVI application

On December 9, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and regulations. *Id*. As relief, Plaintiff requests that the Court remand this case to the Commissioner to conduct a new administrative hearing. *Id*.

On June 22, 2021, the Commissioner filed an Answer. (Doc. 16). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. *Id*. Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 17).

Plaintiff's Brief (Doc. 20) and the Commissioner's Brief (Doc. 23) have been filed. Plaintiff did not file a Reply Brief. This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d

198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-

02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity

---

[3] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on December 19, 2019.

that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.   Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

  A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his December 2019 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 1, 2007 (Plaintiff's alleged onset date) and December 19, 2019 (the date the ALJ decision was issued).[4] (Admin. Tr. 17; Doc. 17-2, p. 18). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: depression; ADHD; and autism spectrum disorder. (Admin. Tr. 18; Doc. 17-2, p. 19). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18; Doc. 17-2, p. 19).

---

[4] In supplemental security income ("SSI") benefits, the relevant period begins on the date the claimant files an application for SSI benefits. 20 C.F.R. § 416.202; 20 C.F.R. 416.501; *Ramajan v. Saul*, No. 17-cv-13170, 2019 U.S. Dist. LEXIS 157018, at *11 (D.N.J. Sept. 10, 2019). Thus, the relevant period for Plaintiff's SSI claim is the application date (January 3, 2019) to the date of the ALJ's decision (December 19, 2019).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in all ranges of work work as defined in 20 C.F.R. § 416.967 except that he has the mental capacity to:

> perform routine repetitive tasks involving very short and simple instructions. he must have a production oriented type-job situation involving little independent decisions [sic] making. He can occasionally interact with supervisors and coworkers and never interact with the public.

(Admin. Tr. 19; Doc. 17-2, p. 20).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 23; Doc. 17-2, p. 24). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24; Doc. 17-2, p. 24-25). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: kitchen helper, DOT #318.687-010; bakery racker, DOT #524.687-018; and small products assembler, (DOT #739.687-030. (Admin. Tr. 24; Doc. 17-2, p. 25).

In his statement of errors, Plaintiff raises the following issue:

(1)   The ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion evidence in accordance with the prevailing rules and regulations.

(Doc. 20, p. 8).

On review I must decide if the ALJ erred in his consideration of the two opinions in the record, those of Lisa Marie Wright (Plaintiff's treating CRNP) and Dr. Molly Cowan (State Agency Psychological Consultant). I'll discuss each in turn.

B.   WHETHER THE ALJ ERRED IN HIS ANALYSIS OF NP WRIGHT'S OPINION

Plaintiff contends that the ALJ erred in finding Lisa-Marie Wright, CRNP's medical opinion not persuasive. Before I delve into the details of each party's arguments, I will discuss the standards used for evaluating medical opinion evidence.

1.   Standards for Analyzing Medical Opinion Evidence

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of

examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

According to the regulations the most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

As stated, the two most important factors are supportability and consistency. The supportability factor contemplates that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). This contrasts with the consistency factor, which requires that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2). This legalese can be simplified as follows:

> [S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record.

*Cook v. Comm'r of Soc. Sec.*, No. 20-cv-1197, 2021 WL 1565832, at *6 (M.D. Fla. Apr. 6, 2021).

    2.      Did The ALJ Err in Finding Ms. Wright's Opinion Unpersuasive

Ms. Wright is Plaintiff's treating provider. As summarized by the ALJ, she opined that:

> the claimant has extreme and marked limitations in mental abilities and aptitude needed to do unskilled work and mental abilities and aptitude needed to do semiskilled and skilled work (23F/4-5). Ms. Wright noted the claimant the claimant has extreme limitations in mental abilities and aptitude interacting appropriately with the general public and maintaining socially appropriate behavior (23F/5). Ms.

Wright indicated the claimant has marked limitations interacting with others and adapting or managing himself and moderate limitations understanding, remembering, or applying information and concentrating, persisting, or maintaining pace (23F/6). Ms. Wright reported the claimant will be absent more than three times a month (23F/3).

(Admin. Tr. 22; Doc. 17-2, p. 23).

The ALJ found the opinion to be unpersuasive because:

This statement is also unsupported because it is a checklist with limited explanation. Further, this statement is inconsistent with the claimant's lack of inpatient mental health treatment or referral to crisis intervention since the filing date. The claimant's treatment, since the filing date, has been conservative in nature and the treatment records do not support the extreme and marked limitations noted by Ms. Wright. Additionally, this statement is inconsistent with the claimant's activities of daily living, which shows the claimant has no problems with his personal care activities; watches television; plays video games; and can prepare simple meals, do laundry, clean, mow, drive, shop in stores, pay bills, and count change (Hearing Testimony; 4E). Furthermore, the claimant's school records ,as noted above in detail, do not support the extreme and marked ratings assessed by Ms. Wright. Therefore, the undersigned finds Ms. Wright's statement is unpersuasive.

(*Id.*).

Plaintiff contends that there are four errors in the ALJ's reasoning: (1) the ALJ erred in stating that the opinion was merely a checklist opinion with limited explanation, (2) the ALJ erred in dismissing the opinion because Plaintiff only received conservative treatment, (3) the ALJ erred in dismissing the opinion because it appeared inconsistent with Plaintiff's activities of daily living, and (4)

the ALJ erred in stating the opinion was inconsistent with school records. I'll discuss each alleged error in turn.

*First*, Plaintiff contends that the ALJ erred in his consideration of Ms. Wright's opinion because he found it to be unsupported as it was a "checklist with limited explanation." (Doc. 20, pp. 10-11). Plaintiff claims Ms. Wright provided more than just a checklist opinion and contends "she provided handwritten explanations on the form to explain her opinion." (*Id.*). Plaintiff continues, stating "[t]he ALJ may not simply state the opinion does not provide explanation when the record clearly demonstrates otherwise." (*Id.*). The Commissioner retorts that the ALJ thought the opinion was unsupported because it was a "checklist with *limited explanation*." (Doc. 23, pp. 12-13) (emphasis in the original). Thus, the Commissioner contends that ALJ acknowledged Ms. Wright's explanation, but found them limited. (*Id.*).

I agree with the Commissioner. Plaintiff complains that the ALJ ignored the fact that Ms. Wright provided a written explanation of her checklist opinion. That is contrary to the text of the ALJ's opinion, since he acknowledged Ms. Wright's "limited explanation[s]." So, contrary to Plaintiff's contention, this is not a case where the ALJ "simply state[s] the opinion does not provide explanation when the

record clearly demonstrates otherwise."[5] (Doc. 20, p. 11). Thus, there is no reversible error on this point.

*Second*, Plaintiff contends it was an error for the ALJ to use Plaintiff's conservative treatment as a reason to dismiss Ms. Wright's opinion. (Doc. 20, pp. 11-13). Additionally, Plaintiff argues that conservative treatment is a misleading description, as Plaintiff was hospitalized for his psychological impairments. (*Id.*). The Commissioner counters that while Plaintiff had more intensive treatment during childhood, during the relevant period and the preceding year, Plaintiff only had conservative treatment. (Doc. 23, pp. 16-17). Thus, it was not an error to describe Plaintiff's treatment as conservative in deciding the persuasiveness of Ms. Wright's opinion. (*Id.*). Additionally, the Commissioner contends it is appropriate to consider the type of treatment a plaintiff receives in consideration of medical opinion evidence. (*Id.*). Here, I agree with the Commissioner – there is no reversible error on this point.

Conservative treatment can be used as a factor in evaluating medical opinion evidence. 20 C.F.R. § 416.920c (c)(3)(iv) (in evaluating medical opinions, an ALJ can consider "[t]he kinds and extent of examinations and testing the medical

---

[5] And upon review of the opinion, it was within the purview of the ALJ to reject the explanations as limited, as the explanations are relatively terse and draw on older evidence.

source has performed or ordered . . .”); *Woodruff v. Saul*, No. 20-cv-946, 2021 WL 2012568, at *20 (E.D. Pa. May 20, 2021) (“an ALJ is permitted to consider a claimant's treatment history when evaluating the medical opinion evidence.”). If there is an explanation for why a claimant failed to seek more intensive treatment, then the ALJ must consider the explanation before merely weighing conservative treatment against a claimant. *Vargas v. Berryhill*, No. 18-cv-1121, 2019 WL 3036533, at *29 (E.D. Pa. Jan. 30, 2019). But, if there is nothing in the record to suggest more intensive treatment was necessary, the ALJ can “infer that Plaintiff's condition was not severe enough to require more than conservative treatment.” *Dietrich v. Saul*, 501 F.Supp.3d 283, 297 (M.D. Pa. 2020) (report and recommendation adopted by 501 F.Supp.3d 283 (M.D. Pa. Nov. 19, 2020)).

As applied here, it was acceptable for the ALJ to rely, *in part*, on Plaintiff's conservative treatment in making a decision on Ms. Wright's opinion. First, an ALJ is permitted to consider the type of treatment a plaintiff receives in analyzing the medical opinion evidence. *Woodruff*, 2021 WL 2012568, at * 20. The ALJ considered the type of Plaintiff's treatment as well as other evidence in making his credibility decision. He reasonably concluded that the evidence is not fully consistent with Ms. Wright's medical opinion.

Second, Plaintiff does not point to, and the Court does not find anywhere in the record, where a provider recommended more serious treatment during the relevant period for Plaintiff.[6] So, it was acceptable for the ALJ to infer that Plaintiff's condition was not serious enough to warrant more than conservative treatment. *Dietrich*, 501 F.Supp.3d at 297. Third, Plaintiff argues that inpatient hospitalization is not required to establish that a plaintiff's limitations are not severe. While that is correct, the ALJ relied on more than just the type of treatment Plaintiff received to make his decision. If the lack of an inpatient hospitalization was the only factor the ALJ gave to discredit Ms. Wright's opinion, that would be troublesome. But that is not the case here. The ALJ cites, in conjunction to his observation of conservative treatment, to the objective medical records, educational records, and to Plaintiff's activities of daily living.

Finally, Plaintiff contends that the label "conservative treatment" is not accurate since Plaintiff had inpatient hospitalizations as a child. (Doc. 20, pp. 12-13). The Commissioner contends that this evidence is way before the relevant period, and thus, it was acceptable for the ALJ to describe Plaintiff's treatment as "conservative." (Doc. 23, p. 16). Again here, I agree with the Commissioner.

---

[6] Plaintiff does not cite, nor is it in the record, anytime where a provider recommended more serious treatment even in the year before the relevant period.

In supplemental security income ("SSI") benefits, the relevant period begins on the date the claimant files an application for SSI benefits. 20 C.F.R. § 416.202; 20 C.F.R. 416.501; *Ramajan v. Saul*, No. 17-cv-13170, 2019 U.S. Dist. LEXIS 157018, at *11 (D.N.J. Sept. 10, 2019). "A social security claimant's 'complete medical history' includes medical records covering at least the 12 months preceding the month in which the application was filed." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 133 (3d Cir. 2017) (citing 20 C.F.R. § 416.912(b)(1)(ii). An ALJ has no obligation to consider medical records more than 12 months before the filing of an SSI application. *Id.*

Here, Plaintiff was hospitalized multiple times in 2009 and 2010 "subsequent to behaviors that endangered himself and others." (Admin. Tr. 392; Doc. 17-7, p. 96) ("Hunter was hospitalized at KidsPeace during August and October 2009 . . . [and] from May 22, 2010 to July 2, 2010."). *See also* (Admin. Tr. 369; Doc. 17-7, p. 73); (Admin. Tr. 383; Doc. 17-7, p. 87). This treatment was nine to ten years before the relevant period. To any extent it is relevant, given the distant nature of the hospitalization, the ALJ did not have to consider it. *Miller*, 719 F. App'x at 133. As such, I find no reversible error in this argument.

*Third*, Plaintiff contends that the ALJ erred in using Plaintiff's ability to complete activities of daily living to discount Ms. Wright's opinion because he

failed to consider that Plaintiff "lived with his parents, needed reminders to accomplish his chores, and did not manage finances well." (Doc. 20, p. 13). Plaintiff contends that the failure to address these limitations constitutes the cherry picking of evidence. (*Id.*). The Commissioner counters that the ALJ did not err, as he correctly described Plaintiff's ADLs. (Doc. 23, pp. 18-19).

Here I find the use of Plaintiff's ADLs is supported by substantial evidence. As noted by the ALJ, Plaintiff takes vacations with his family, (Admin. Tr. 38-39; Doc. 17-2, pp. 39-40), takes care of himself with only occasional reminders,[7] (Admin. Tr. 46; Doc. 17-2, p. 47), and received a B grade at welding school. (Admin. Tr. 287; Doc. 17-6, p. 107). Additionally, the ALJ noted that has "no problems with his personal care activities; watches television; plays video games; and can prepare simple meals, do laundry, clean, mow, drive, shop in stores, pay bills, and count change." (Admin. Tr. 22; Doc. 17-2, p. 23).

I acknowledge that there is evidence that support Plaintiff's claims such as Plaintiff's need for reminders, (Admin. Tr. 44; Doc. 17-2, p. 45), that he does not live by himself, (Admin. Tr. 45; Doc. 17-2, p. 46), or that he does not manage his finances well. (Admin. Tr. 200; Doc. 17-6, p. 20). But even though there is

---

[7] Plaintiff testified that he cleans his room, takes his medication, and lets the dog out. (Admin. Tr. 46; Doc. 17-2, p. 47). When asked if he did these chores without reminders, he answered, "[n]ot everything." (*Id.*).

favorable evidence to Plaintiff in the record, I cannot reweigh the evidence. *See Williams v. Kijakazi*, No. 20-cv-624, 2021 WL 4439438, at * 10 (M.D. Pa. Sept. 28, 2021) ("this Court may not invade the ALJ's province as finder of fact in disability proceedings"). Further, the favorable evidence is not so overwhelming that it warrants remand. *See e.g.*, *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence.").

Plaintiff also complains that the ALJ "provided no explanation as to how Plaintiff's ability to prepare simple meals, clean, drive, and count change would provide inconsistencies with NP Wright's opinion." (Doc. 20, p. 14). But these limitations are reasonably related to Ms. Wright's opinion on Plaintiff's ability, *inter alia*, to carry out very short and simple instructions, sustain an ordinary routine without special supervision, be aware of normal hazards and take appropriate precautions, and travel to an unfamiliar place.[8] Further, the ALJ cited more than these three ADLs in rejecting Ms. Wright's opinion, including how Plaintiff has no problems with his personal care activities, and his ability to care for the house. In addition, while discussing Plaintiff's credibility in another section of the opinion, the ALJ cited Plaintiff's other ADLs such as his ability to fish,

---

[8] Ms. Wright opined that Plaintiff has a moderate or marked limitation in these traits.

attend school, and go on vacations with family. *Riddick ex rel. I.J.B. v. Astrue*, No. 06-cv-648, 2009 WL 1856674, at * 17-18 (D. Del. June 29, 2009) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)) ("The Third Circuit instructions that the ALJ's decision, read as a whole, must illustrate 'that the ALJ considered the appropriate factors in reaching the conclusion.'"). Thus, the ADLs Plaintiff cites to are reasonably related to limitations opined by Ms. Wright.

Also, the ALJ is under no obligation to discuss how the ADLs are inconsistent with Ms. Wright's medical opinion. *See Laicha v. Kijakazi*, No. 20-cv-421, 2021 WL 3929739, at * 33-34 (M.D. Pa. Sept. 2, 2021) (upholding ALJ's rejection of a provider's medical opinion when the ALJ explained "that the opinion was inconsistent with his treatment notes . . . as well as [the plaintiff's] self-reported activities of daily living."). Rather, when read as a whole, the ALJ's reasoning on this matter satisfies the substantial evidence standard. Thus, there is no reversible error on this point.

*Fourth* and finally, Plaintiff contends that the ALJ erred when he discounted, in part, Ms. Wright's opinion because it was inconsistent with Plaintiff's school records. (Doc. 20, pp. 14-15). Plaintiff contends the ALJ erred because the ALJ allegedly cherry picked evidence to support his reasoning. (*Id.*). The Commissioner urges me to reject that argument and argues that that the ALJ looked at the record,

and correctly observed that Plaintiff's educational records served as a solid basis to reject Ms. Wright's opinion. (Doc. 23, pp. 14-16). On this point, I agree with the Commissioner.

In discounting Ms. Wright's opinion, the ALJ cited "the claimant's school records, as noted above in detail, do not support the extreme and marked ratings assessed by Ms. Wright." (Admin. Tr. 22; Doc. 17-2, p. 23). Earlier in the ALJ's opinion, he noted:

> The claimant's education records also do not support the claimant's allegations. In his 2017-2018 school year, the claimant meet his behavioral goal in the fourth marking period (19F/17; 21F/9). A September 2018 IEP noted the claimant "does well in the classroom academically" (19F/17; 21F/9), and "[i]n Math [the claimant] does very well completing individual assignments" (19F/18; 21F/10). A September 2019 IEP indicates the claimant is in the classroom 100% a day (14E/20), and his teacher notes the claimant "produces high quality work when focused on the task at hand. H[e] performs at his best when the classroom is very structured and he has a routine" (14E/8). His second quarter 2018-2019 grades are in the 90s or Excellent/Outstanding, which comments including "works to potential," "produces good quality work," and "pays attention" (24F/2). He earned a "B" in the first quarter of the 2019-2020 school year (17E/1).

Plaintiff alleges that the ALJ cherry picked these positive instances because the same records shows that he had "difficulty focusing, trouble interacting with others, and been suspended with police involvement due to his aggressive behavior." (Doc. 20, p. 15). However, upon review of the record, I find the ALJ's

reasoning on this matter to be supported by substantial evidence. The ALJ did not cherry pick adverse evidence from the record, as the educational record as a whole shows that Plaintiff is reasonably successful in school and has managed his limitations well. As noted by the ALJ, Plaintiff's educational records show a reasonably behaved student. For example:

- In a February 2019 evaluation, two teachers stated, "over the past 2 years Hunter has significantly improved on his ability to manage his emotions . . . [h]e is much better at processing his feelings and handling himself appropriately." (Admin. Tr. 224; Doc. 17-6, p. 44).

- A 2019 individualized educational plan ("IEP") that indicated Plaintiff had grades ranging from 79% to 93%, but "below basic" grades on the Keystone Exams. (Admin. Tr. 268; Doc. 17-6, p. 88). The IEP also noted that Plaintiff "produces high quality work when focused on the task at hand . . . [and] performs at his best when the classroom is very structured and he has a routine. Hunter has a tendency to get off task when working in a group setting." (Admin. Tr. 269; Doc. 17-6, p. 89). The IEP noted that he met or came "very close to meeting" his behavioral goals. (*Id.*).

I acknowledge that the educational records have some supportive evidence for Plaintiff, including that he was involved in a school altercation in 2019,

(Admin. Tr. 284; Doc. 17-6, p. 104), a 2017 IEP that stated "Hunter struggles to accept directions and redirections for his actions,"[9] and an "Individual Service Plan" noted that "[h]e still shows some disrespect and anger issues.[10] (Admin. Tr. 821; Doc. 17-12, p. 14). But this evidence is at best neutral for Plaintiff, as the same records note that Plaintiff is doing relatively well. *See* fns. 8-9. Nonetheless, even if there is favorable evidence to Plaintiff in the record, I cannot reweigh the evidence. *See Williams*, 2021 WL 4439438, at * 10 ("this Court may not invade the ALJ's province as finder of fact in disability proceedings"). Further, the favorable evidence is simply not overwhelming. *See Kent*, 710 F.2d at 114 (explaining that evidence is not substantial "if it is overwhelmed by other evidence."). Thus, there is no reversable issue on this point.

In sum, whether I analyze the ALJ's reasoning on Ms. Wright's opinion issue by issue, or as a whole, it is supported by substantial evidence.

---

[9] The same IEP noted that Plaintiff "is super invested in the curriculum that YBEC has to offer. He takes every opportunity that he has to get something out of the program." (Admin. Tr. 707; Doc. 17-11, p. 14).

[10] This Service Plan from the Franklin/Fulton County MH/DD Program also noted that Plaintiff is "doing well in school does not need any help in school." (Admin. Tr. 821; Doc. 17-12, p. 14).

C.   DID THE ALJ ERR WITH RESPECT TO HIS CONSIDERATION OF THE
      STATE AGENCY CONSULTANT'S OPINION

Plaintiff contends that the ALJ erred in finding the state agency consultant's opinion persuasive because "the consultant did not review any of the opinion evidence of record," namely, an opinion from a treating source. (Doc. 20, p. 14). The Commissioner broadly counters that the ALJ's consideration of this opinion is supported by substantial evidence, and that Plaintiff has not described how this alleged error harmed him. (Doc. 23, pp. 21-23). I agree with the Commissioner.

The ALJ discussed Dr. Cowan's opinion and explained why he gave credence to the state agency psychological consultant as follows:

> The record includes a February 2019 statement from a state agency psychological consultant, Molly Cowan, PsyD. Dr. Cowan stated the claimant has mild limitations understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing himself (1A/6-7). This statement is supported by the longitudinal treatment notes, which generally show the claimant is in no acute distress, fully oriented, and cooperative with stable mood, normal rate and rhythm of speech, coherent and goal directed thought processes, appropriate behavior, normal thought content, improved attention and concentration, intact insight, and intact judgment (16F; 26F). This statement is also consistent with the claimant's activities of daily living, which shows the claimant has no problems with his personal care activities; watches television; plays video games; and can prepare simple meals, do laundry, clean, mow, drive, shop in stores, pay bills, and count change (Hearing Testimony; 4E).In addition , the claimant's school records, as discussed above in detail, support Dr. Cowan's statement. Further, Dr. Cowan is a highly qualified expert who had the

opportunity to review the claimant's records. Accordingly, the undersigned finds Dr. Cowan's statement is persuasive.   (ALJ Opinion, Doc. 17-2, p. 23)

Plaintiff has not cited any relevant authority that a state agency consultant must consider other medical opinions to come to their own conclusions.[11] Nor has the Court found any. It is Plaintiff's burden to show that the ALJ erred in his decision, and the failure to cite to controlling authority does not satisfy this burden. *Dickson v. Berryhill*, No. 17-cv-1586, 2018 WL 2461761, at *12 (M.D. Pa. June 1, 2018) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). This argument fails.

[The next page contains the conclusion]

---

[11] State agency opinions are valid medical opinions and "merit significant consideration" by an ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "Simply because these opinions were rendered by state agency physicians who did not have a treating relationship with Plaintiff does not . . . mean that the ALJ could not give them significant weight[.]" *Jones v. Colvin*, No. 14-cv-2337, 2016 WL 1071021, at * 12 (M.D. Pa. Mar. 17, 2016).

V.     CONCLUSION

For these reasons Plaintiff's request for his case to remanded will be denied

as follows:

    (1) The final decision of the Commissioner will be AFFIRMED.

    (2) Final judgment will be issued in favor of Kilolo Kijakazi.

    (3) An appropriate Order will follow.


Date: September 6, 2022         BY THE COURT

                                *s/William I. Arbuckle*
                                William I. Arbuckle
                                U.S. Magistrate Judge